## Calvin Ragsdale, Appellee, v. Illinois Central Railroad Company, Appellant.

1. VERDICT—*when not excessive.* A verdict for $6,000 rendered in an action for personal injuries is not excessive where it appears that the injuries were distressing, that the ensuing pain was acute, that the plaintiff, previously a strong man twenty-three years of age, was, by reason of the injury, not only disfigured for life but rendered, to a large extent, incapable of further manual labor.

2. MASTER AND SERVANT—*who not fellow-servants as matter of law.* The members of a crew engaged in removing one boiler and installing another are not fellow-servants as a matter of law, where such crew were in the charge and control of a foreman.

3. MASTER AND SERVANT—*when doctrine of assumed risk does not apply.* A member of a crew engaged in removing one boiler and installing another who is injured by escaping steam cannot be said

as a matter of law, to have been injured by one of the ordinary hazards of his employment.

4. MASTER AND SERVANT—*duty to furnish safe place to work.* The master is only required to exercise ordinary and reasonable care to see that the machinery, tools and appliances furnished to his servant are reasonably safe.

Action in case for personal injuries.   Appeal from the Circuit Court of Union county; the Hon. W. W. DUNCAN, Judge, presiding. Heard in this court at the August term, 1907.   Affirmed.   Opinion filed March 18, 1908.

W. W. BARR, F. M. YOUNGBLOOD and R. J. STEPHENS, for appellant; J. M. DICKINSON, of counsel.

JAMES LINGLE, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This was a suit by appellee to recover damages for personal injuries occasioned him while in the employ of appellant, by the escape of steam caused by the breaking of a flange upon a stationary engine owned by appellant.

The proofs in the record disclose that on January 2, 1907, Fred Penwell, the foreman of appellant's waterworks department, sent William Harmon in charge of a crew of men, appellee being one of them, from Carbondale to Gale, a station on appellant's line, to take out a boiler used by appellant for its pump at that station, and put another boiler in its place.   Harmon, as stated in appellant's brief, went as foreman to direct the men while at work and see that the same was properly advanced in accordance with Penwell's direction.   The boiler to be installed was called an "emergency boiler," as it was moved from place to place along appellant's road temporarily to take the place of other boilers needing overhauling and repairs.   In May of the previous year it had been shipped to the repair shop at Centralia, where it was repaired, inspected and tested and sent out as being in good condition.   After that time, be-

fore being sent to Gale, it had been used at two other places. When the crew arrived at Gale, the men went to work under Harmon's direction and removed from the boiler house the boiler which was then there and set up the emergency boiler in its place. The boiler house was a small building fourteen feet wide by eighteen feet long, located by the side of appellant's track. The old boiler was connected with a steam pump used to pump water into a tank above it. The pump stood at the right of the boiler and steam was brought to it from the boiler through a wrought iron pipe which extended straight up from the steam dome of the boiler some five or six inches, then turned with an elbow toward the pump, and when directly over it turned down with another elbow and made a connection with it. At the boiler it was connected by means of a cast iron flange three-fourths of an inch thick, bolted to the head of the dome which stood on the boiler, and between the dome head and the flange was a gasket. After the emergency boiler was put in place it was found the pipe leading down to the pump was some five inches too long. As the crew had no dies to cut new threads, it was suggested the boiler be raised, thereby raising the pipe so the connection could be made without cutting it. This being agreed to, Harmon said, "If you are going to jack it up, get at it," and thereupon the boiler was raised under Harmon's direction and the connections made. A fire was then started and steam raised, but for some reason the pump would not start and the piston appeared to have been "hung on center." Two of the crew then attempted to pry the piston off the center with wood or iron pries placed against the arm or rocker of the pump. After the men had used the pries for some minutes and put considerable force upon them, a call was made for the steam to be turned on, either by Harmon or one of the men in his presence. Accordingly, the steam was turned on and immediately an explosion took place which filled the boiler house

with steam and hot water. All the men appear to have escaped from the boiler house but appellee. After the others had gotten out they heard his cries and went back and took him out. He was badly scalded about the head, body and arms. He has to a large extent lost the use of his hands, which permanently disables him for manual labor, and is disfigured for life. His suffering was intense and of long duration. After the explosion it was discovered that the flange in question on top of the dome had been broken in pieces. Three of these were exhibited at the trial, and several witnesses testified there were old cracks in them.

Appellee charged in his declaration that the flange above referred to was unsound and improperly and insecurely fastened, and that appellant knew, or by reasonable diligence could have known, of these conditions; also that the steam pipe connecting the boiler with the pump was carelessly, negligently, improperly, unsafely and insecurely fastened to and connected with said boiler and pump, and negligently, improperly and unsafely adjusted, placed and arranged. There was a verdict in favor of appellee for $6,000. A judgment for that amount was entered and appellant has brought the record to this court for review.

The preponderance of the evidence appears to us to have shown that the flange was imperfect and insecure; that it had old cracks in it and was not inspected; and that the test of the boiler did not include a careful, if indeed any, inspection of the flange.

The complaint made of the pipe connections between the boiler and the pump was that the pipe and connections were rigid and would not give at any place, so that the settling or moving out of line of the boiler or pump would cause a strain on the connections; and it is claimed that the proper method of making the connections would be by what was called a swinging line, with expansion joints, which would relieve the strain. What was the proper and approved method

Ragsdale v. Illinois Central Railroad Company.

of making the connections and whether the connections in the manner in which they were made were in fact unsafe and insecure under the circumstances, were controverted questions of fact, difficult of solution, and the verdict of the jury in regard to them must therefore prevail.

Appellant claims that even if the injuries to appellee were caused by negligence, it was the negligence of his fellow-servants in the same line of employment with him, for which appellant was not liable. The crew at work in setting up the boiler and making the connection was shown conclusively to have been in charge of Harmon, who had served the company as foreman of waterworks and in other capacities some sixteen years, a part of which time he had been employed in equipping boilers, engines and pumps. He had charge and control of the men and was directing the manner in which the work should be done. Under these circumstances it could not properly be held, as a matter of law, that the injury was caused by the negligence of a fellow-servant; but that was a question of fact, and upon it the evidence appeared to be in favor of appellee and against the contention of appellant. Nor can we hold, against the verdict of the jury, that appellee was injured by one of the ordinary hazards of the business in which he was engaged and which he must assume.

Ten instructions were given by appellee, to seven of which appellant makes objection. An examination of these instructions, however, discloses that all of them, except the third, correctly state propositions of law applicable to the case. The objection to appellee's third instruction is, the first part of it states that "under the law it is the duty of the master to furnish and provide reasonably safe machinery, tools and appliances in and about the work to be performed by the servant," whereas the correct rule only requires the exercise of ordinary and reasonable care to see that such machinery, tools and appliances are reason-

ably safe. While that part of the instruction referred to was not strictly correct, yet words were used toward the close of it which in a measure modified the strictness of the rule above laid down, so as to tend to make the instruction conform in substance to the correct rule. As a whole the instruction was somewhat obscure and slightly contradictory. We do not think, however, appellant's case could have been prejudiced by this instruction, for the reason that appellee's instruction No. 2 and appellant's instructions Nos. 10 and 21 correctly stated the rule as contended for by appellant, in plain language which could not be misunderstood.

Appellant complains of the action of the court in refusing four of the instructions offered by it. An inspection of the record shows that two of these instructions were fully covered by other instructions given for appellant. The other two refused instructions incorrectly stated the law in regard to fellow-servants, the rule being correctly stated in other instructions given for appellant. Fourteen instructions were given for appellant, which presented the law applicable to his side of the case fairly and fully. While the damages assessed by the jury were large, yet in view of the fact that his injuries were so distressing and the pain suffered by him so acute, and as he was previously a strong man, twenty-three years of age, and is not only disfigured for life but rendered to a very large extent incapable of further manual labor, we do not feel justified in holding that the damages are so excessive as to warrant a reversal of the judgment on that account.

The judgment of the court below will be affirmed.

*Affirmed.*